Michael D. Wilson (MW5633)
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiff
45 Broadway
New York, New York 10006
(212) 669-0600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
MARTRADE SHIPPING & TRANSPORT
GmbH,
                              :
              Plaintiff,      :     Index No.:
                              :     08 CV _____ (    )
      - Against -             :
                              :     VERIFIED COMPLAINT
SASCO GmbH,                   :
              Defendants.     :
- - - - - - - - - - - - - - - - - -x

Plaintiff, Martrade Shipping & Transport GmbH ("Martrade"), by and through its attorneys, Hill Rivkins & Hayden LLP, as and for its Verified Complaint against the above named defendant alleges upon information and belief as follows:

1. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for a breach of a maritime contract. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1333 and, alternatively, 28 U.S.C. §1331 as this action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201 et seq. and/or the Federal Arbitration Act, 9 U.S.C. §1, et seq.

2. At and during all material times hereinafter mentioned, plaintiff Martrade was and now is a foreign business entity organized and existing by virtue of foreign law with an office and place of business at Jan-Wellem Platz 3, 40212 Dusseldorf, Germany.

3. At and during all material times hereinafter mentioned, defendant SASCO GmbH ("SASCO") was and now is a foreign business entity organized and existing by virtue of foreign law with an office and place of business at Hohe Bleichen 5, 20354 Hamburg, Germany.

4. On or about November 15, 2005, SASCO, as charterer, and plaintiff Martrade, as owner, entered into charter party on the Gencon 1994 Box Lay Out form for the charter of the vessel CAPTAIN GEORGE TSANGARIS.

5. The aforementioned charter party provided for arbitration of any disputes arising under the charter in ond, with English law to apply.

6. Disputes arose under the subject charter party regarding a claim by plaintiff for damages for detention of the vessel incurred at Odessa, Russia due to repairs to the vessel for damage to the vessel caused by loading stevedores.

7. On May 2, 2006, plaintiff appointed David Farrington of Buckinghamshire, England, a member of the London Maritime

Arbitrators Association, as its arbitrator pursuant to the charter party arbitration clause. Despite the natice of said appointment, defendant failed to appoint an arbitrator. On December 6, 2006, arbitrator David Farrington accepted appointment as Sole Arbitrator pursuant to section 17(2) of the English Arbitration Act.

8. Following written submissions by both plaintiff and defendant and after due consideration, the Sole Arbitrator issued a First Final Award dated September 14, 2007 in favor of plaintiff Martrade in the principal amount of $88,802.08, plus interest on the principal amount at a rate of 8.25% compounded quarterly from December 31, 2005 until payment, presently totaling in excess of $15,570.00, plus costs, which are estimated to be in excess of $45,000.00. The total sum, inclusive of interest, is today calculated at U.S. $149,552.00. A true and accurate copy of the Award is attached as Exhibit 1.

9. Despite due demand, the amounts awarded to Martrade remain due and outstanding and interest continues to accrue.

10. This action is brought to obtain jurisdiction over defendant SASCO to enforce the arbitration Award rendered in London as well as to obtain security.

11. After investigation, defendant SASCO cannot be "found" in this District for purposes of and as delineated in Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims

of the Federal Rules of Civil Procedure. Plaintiff is informed that defendant SASCO has, or will shortly have, assets within this District, including but not limited to, cash, funds, escrow funds, credits, wire transfer, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and sub-charter hire, at or being transferred and/or wired to, from or through:

JPMorgan Chase Bank NA, Citibank NA, American Express Bank Ltd., Bank of America, Bank of New York, Deutsche Bank, HSBC, BNP Paribas, Wachovia Bank NA, ABN Amro, Atlantic Bank of NY, Standard Chartered Bank, Bank of Communications, The Bank of East Asia (USA) NY, Bank of China, Shanghai Commercial Bank Ltd., Bank of Tokyo-Mitsubishi, Barclays Bank, Credit Suisse, Rabobank, Wells Fargo Bank, US Bank, UBS,

and/or other garnishees as further investigation may uncover.

12. The total amount sought to be attached by plaintiff pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims is **$149,552.00**, plus interest and costs, calculated as follows:

(i) Final Award in the amount of US $88,802.08 plus interest at 8.25% compounded quarterly from December 31, 2005 in the present amount of $15,750.00 for a total presently due and owing of $104,552.00.

(ii) Award of Assessed Costs in the amounts of $45,000.00 for a total due and owing of **$149,552.00**.

4

**W H E R E F O R E**, plaintiff Martrade, prays:

1. That process in due form of law according to the practice of this Court may issue against defendant SASCO, citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claim, plus interest, costs and attorneys' fees;

2. That if defendant SASCO GmbH cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, that all assets of defendant up to and including **US $149,552.00** be restrained and attached, including but not limited to cash, funds, escrow funds, credits, wire transfer, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, at or being transferred and/or wired to, from or through:

JPMorgan Chase Bank NA, Citibank NA, American Express Bank Ltd., Bank of America, Bank of New York, Deutsche Bank, HSBC, BNP Paribas, Wachovia Bank NA, ABN Amro, Atlantic Bank of NY, Standard Chartered Bank, Bank of Communications, The Bank of East Asia (USA) NY, Bank of China, Shanghai Commercial Bank Ltd., Bank of Tokyo-Mitsubishi, Barclays Bank, Credit Suisse, Rabobank, Wells Fargo Bank, US Bank, UBS,

and/or other garnishees upon who a Writ of Maritime Attachment and Garnishment may be served;

3. And for such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
         February 8, 2008

                HILL RIVKINS & HAYDEN LLP
                Attorneys for Plaintiff

By: _____
        Michael D. Wilson (MW5633)
        45 Broadway
        New York, New York 10006
        (212) 669-0600

## VERIFICATION

I, Michael D. Wilson, hereby affirm as follows:

1. I am an attorney and member of the firm Hill Rivkins & Hayden LLP, attorneys for plaintiff Martrade Shipping & Trading, GmbH. I have prepared and read the foregoing Verified Complaint and know the contents thereof and, the same is true to the best of my knowledge, information and belief.

2. The sources of my knowledge, information and belief are documents provided by our clients and our discussions with them.

3. As plaintiff is a foreign business entity and none of its officers is located in the Southern District of New York, this verification is made by me as counsel of record.

I hereby affirm that the foregoing statements are true and correct.

Dated:   New York, New York
         February 8, 2008

_____
Michael D. Wilson (MW5633)

29768\VerifiedComplaint

IN THE MATTER OF THE ARBITRATION ACT 1996

AND IN THE MATTER OF AN ARBITRATION

BETWEEN:



MARTRADE SHIPPING & TRANSPORT GmbH of Dusseldorf

Claimants (Disponent Owners)

and

SASCO GmbH of Hamburg

Respondents (Charterers)

"Capt. George Tsangaris"; charterparty dated 25th November 2005

---
### FIRST FINAL AWARD
---

WHEREAS

1. By a charterparty on an amended Gencon 1994 Box Layout form dated 25th November 2005 ("the charterparty) it was agreed between Martrade Shipping & Chartering GmbH as Disponent Owners ("the Claimants") and Sasco GmbH as Charterers ("the Respondents") that the Claimants' vessel "Capt George Tsangaris" ("the vessel") would proceed to Odessa and there load a part cargo of steel billets for carriage to and discharge at Karachi.

2. The charterparty provided for arbitration in London with English law to apply. On 2nd May 2006 the Claimants appointed me, David Farrington, of Chorley Farm House, West Wycombe, Buckinghamshire HP14 4BS to act as Arbitrator. I

am a Full Member of the London Maritime Arbitrators Association and a Member of the Baltic Exchange. The Claimants' solicitors, Winter Scott of London, on 19th April 2006 through brokers gave to the Respondents formal notice of my appointment as Arbitrator and called upon the Respondents to appoint an Arbitrator. The brokers confirmed that the formal notice had been forwarded to the Respondents. The Respondents failed to appoint an Arbitrator. Accordingly, on 2nd December 2006 I accepted appointment as Sole Arbitrator pursuant to section 17(2) of the Arbitration Act 1996. The seat of this arbitration is England.

3. The dispute referred to me as Arbitrator was a claim by the Claimants against the Respondents for damages for detention in the sum of US$115,955.53 which, said the Claimants, had been incurred at Odessa. The detention of the vessel arose from a delayed departure which was caused by the need to effect repairs to the vessel because she had been damaged by the failure or negligence of stevedores during loading operations. The Claimants also sought payment of interest and costs. The Respondents made written submissions in which they denied liability. They said that the Claimants' obligation under the charterparty was to use maximum efforts to recover direct from the stevedores. The Respondents also alleged delay by the Claimants in making the claim.

4. Both parties have seen the other's written submissions and the documents attached thereto. They have been given an opportunity of replying to those submissions and documents. My Reasons are attached to this First Final Award and form part of it.

NOW I, DAVID FARRINGTON, having taken upon myself the burden of this reference and having carefully and conscientiously considered the evidence and submissions of the parties, **DO MAKE AND PUBLISH THIS MY FIRST FINAL AWARD** as follows:

(A) I HOLD AND FIND that the claim succeeds in the amount of US$88,802.08 and no more.

(B) I AWARD AND ADJUDGE that the Respondents shall pay immediately to the Claimants the sum of US$88,802.08 (Eighty Eight Thousand Eight Hundred and Two United States Dollars and Eight Cents) together with interest thereon at the annual rate of 8.25% compounded every three months from 31st December 2005 until payment.

(C) I FURTHER AWARD AND ADJUDGE that the Respondents will pay the recoverable costs of the Claimants to be assessed if not agreed on the standard basis. I reserve to myself jurisdiction to assess those costs.

(D) I FURTHER AWARD AND ADJUDGE that the Respondents do bear and pay the costs of this First Final Award which I HEREBY FIX at £2,100.00 including interlocutory fees, always provided that if the Claimants have in the first instance paid any sum in respect of the costs of this First Final Award they shall be entitled to immediate reimbursement from the Respondents for the sum so paid together with interest on that sum from the date of payment by the Claimants at the rate of 8.75% per annum compounded every three months until the date of reimbursement by the Respondents.

GIVEN under my hand this 14th day of September 2007

_____          _____
David Farrington                              Witness

3

mv "Capt George Tsangaris"

Charterparty 25th November 2005

**REASONS FOR AND FORMING PART OF THE FIRST FINAL AWARD**

1. This First Final Award arises out of a voyage charter on an amended Gencon 1994 Box Layout form dated 25th November 2005. There is a claim by Disponent Owners against Voyage Charterers for damages for detention in the amount of US$115,955.53 plus interest and costs. The Respondents contest both liability and quantum.

2. The claim arises in the following way. The charterparty provided for freight of US$43.00 per tonne Free In. It also provided:

   *"cargo to be loaded/dunnage/stowed/lashed/secured by Shippers stevedores free of expense to the vessel."*

   On 12th December 2005, whilst the part cargo of steel billets was being loaded in Odessa, a bundle was dropped by the stevedores. The result was damage to and a puncture of the port-side tank top in no 7 Hold, and damage to no 4 fuel oil tank ("the physical damage"). The vessel completed loading of the Respondents' cargo on the same day. Loading of other cargo was completed at 17.30 hours on 15th December. The vessel was then scheduled to sail.

4

3. However, before the vessel could sail the physical damage had to be repaired. The stevedores arranged and paid for the repairs to be effected. The repairs were completed at 23.00 on 18th December. The vessel was cleared outwards by the Odessa authorities at 01.00 on 19th December and actually sailed at 01.40 the same day.

4. The Claimants say that the vessel was detained by reason of the physical damage and consequent repairs from 20.00 on 14th December until 01.40 on 19th December, a period of 4.24 days. They say that the vessel was detained as a result of a breach of charterparty by the Respondents or someone for whom they were responsible (in this case, the shippers' stevedores). The Claimants, therefore, seek damages for detention. The damages are claimed at two rates. For the period up to 15th December at the rate of US$35,000 per day in accordance with the charterparty rate of demurrage; thereafter at the rate of US$27,500 per day which (according to the Claimants) is the daily rate of hire and expenses which the Claimants were paying in their capacity as time charterers under the head time charter.

5. There was a dispute between the parties over whether the charterparty contained the following provision as a separate paragraph:

*"owise detention to apply at the rate of US$35,000 – day/rata..."*

5

That was a provision upon which the Claimants relied. The parties were agreed that the charterparty contained the following words:

*"Stevedores damages, if any, to be settled directly between owners and stevedores w/out chrts interference. In case owners are unable to get such settlement, chrts to by all means assist in getting this settlement and remain ultimately responsible."*

For reasons which will become apparent, I do not consider that it is necessary for me to decide whether the first words quoted in this paragraph were actually part of the charterparty. As appears from the second quotation the parties are agreed that if the Claimants were unable to obtain settlement of the stevedore damages, the Respondents were to remain ultimately responsible.

6. The Respondents said, however, that the absence from the charterparty of detention provisions meant that they had no liability for the delay caused whilst the physical damage were being repaired. They, therefore, wished to confine the meaning of the words "stevedore damages" to the physical damage. In certain circumstances it is true that the absence of a contractual provision can be determinative of parties' rights and obligations, but it does not necessarily follow that such an absence means that a party is relieved from liability. In this reference there can be little doubt that the loading (free in terms) was at the risk and expense of the Respondents. In breach of

charterparty the physical damage was caused by the admitted failure or negligence of the stevedores. I can see no need to construe the meaning of the words "stevedore damages" so that they only relate to the physical damage. It is obvious that there will be occasions (such as occurred at Odessa) when the physical damage is such as to require immediate repair which could delay either further operations on the vessel or a departure. It would be quite illogical if an owner was expected to bear the cost of delay without the opportunity to seek recompense elsewhere. Indeed, such an outcome would be inconsistent with a charterparty regime which imposes the expense and risk of loading upon charterers.

7. Two types of damage were caused by that failure or negligence. First, the physical damage was caused. That damage was repaired by and paid for by the stevedores. There is, therefore, no claim in respect of it. Second, there are the financial damages which in this reference have been limited to the time for which the vessel was delayed whilst the physical damages were repaired. In short, a claim for damages for detention. The Respondents do not dispute that the vessel's departure was delayed because of the need for the vessel to be repaired. I, therefore, find that the vessel was delayed because of that need.

8. Time sheets and a Statement of Facts were in evidence. It is clear that loading of other cargo was not completed until 17.30 on 15th December. I consider that the delay commenced at that point of time, and not at 20.00 on 14th February,

7

for which the Claimants contended. The repairs were complete at 23.00 on 18th December. I consider that to be the point in time when the delay ceased. The vessel was, therefore, detained for 3 days 5 hours and 30 minutes. The period between 23.00 on 18th December and 01.40 on 19th December was occupied by the normal operations of obtaining port clearance – operations which would in any event have had to have been undertaken if the vessel had been able to sail on a previous day.

9. The Respondents submit that they are not liable because the Claimants were under an obligation to exercise "maximum endeavour" to recover from the stevedores all amounts due. Unfortunately for the Respondents, there are no such words in the relevant clause. In fact the clause required the Respondents "to by all means assist" the Claimants. So, if anything, the maximum endeavour was required on the part of the Respondents – a commercially sound approach in the context of a loading which was undertaken at their risk and expense. The evidence was that there were numerous discussions between the parties and that neither the Claimants nor the Respondents were able to make progress with the stevedores on the question of compensation for the delay in sailing. The Respondents say that they can do no more despite what they describe as their efforts to assist the Claimants in every way.

10. I am satisfied on the evidence that the Respondents have used all means they can to assist the Claimants. However, the use of those means did not discharge

the Respondents from liability because, as the words of the clause state, the Respondents remain liable. Those words can only mean that if the Claimants were not successful in effecting a recovery from the stevedores, then the Respondents would pay. Such a construction makes sense in the context of a charterparty on free in terms.

11. The other ground of defence relied upon is an allegation that the Claimants delayed for five months before presenting the claim for damages for detention. Even if the Claimants had delayed (and I find that they did not because an invoice was sent to the Respondents on 31st December 2005), delay in itself is not a ground of defence. In any event, if the Claimants were trying to obtain recompense direct from the stevedores, then some delay was inevitable

12. I have found in paragraph 8 above that the vessel was delayed for 3 days 5 hours and 30 minutes. Damages for detention are to be calculated by reference to the market rate of the vessel. In the absence of evidence as to the market rate, it is permissible to use the rate of demurrage or hire given in a charter – see <u>The Timna</u> [1971] 2 Lloyd's Rep. 91. Although the demurrage rate was US$35,000 per day, the Claimants only seek that rate for the period of 19 hours 30 minutes preceding 17.30 on 15th December. I have, however, declined to include those 19 hours 30 minutes in the detention claim. For time after 17.30 on 15th December the Claimants seek to recover at the lower rate of US$27,500 which they say as time charterers they were paying to the

registered owners. The relevant time charter was in evidence. For the period between 17.30 on 15th December and 23.00 on 18th December I allow damages at the rate of US$27,500 per day or pro rata. The amount awarded is US$88,802.08. I have awarded interest at a rate and in a manner which is consistent with the practice in London maritime arbitration.

13. The Claimants have been successful in this arbitration reference and are, therefore, entitled to their recoverable costs to the standard basis. I reserve to myself power to assess those costs. It is also appropriate that the Respondents should pay the fees on the First Final Award and, if those fees have been paid by the Claimants, then to make immediate reimbursement to the Claimants of that payment.

............................................