# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*l'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
1) *que la demande a été exécutée*
— the (date) -- *le (date)*          Hamburg, 11. April 2008
— at (place, street, number) - *à (localité, rue, numéro)*

                              Albert-Einstein-Ring 11/15, 22761 Hamburg

— in one of the following methods authorized by article 5:
— *dans une des formes suivantes prévues à l'article 5:*

☒ xx (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
*a) selon les formes légales (article 5, alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method:
*b) selon la forme particulière suivante:*

☐ (c) by delivery to the addressee, who accepted it voluntarily.*
*c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

— (identity and description of person)   Angelica Struwe Solis - Beschäftigte des Rechtsanwalts
— *(Identité et qualité de la personne)*   Jan H. Wilhelm als Insolvenzverwalter über das Vermögen
                                            der SASCO GmbH

— relationship to the addressee family, business or other
— *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

2) that the document has not been served, by reason of the following facts*:
2) *que la demande n'a pas été exécutée, en raison des faits suivants:*

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse
the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais
dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pièces renvoyées:*

Zustellersuchen nebst Anlagen

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

Done at   Hamburg                    , the 14.April 2008
*Fait à*                               *le*

Signature and/or stamp
*Signature et/ou cachet*                      Rechtspflegerin

# HILL RIVKINS & HAYDEN LLP

45 Broadway, Suite 1500, New York, NY 10006-3739    Tel: (212) 669-0600
Fax: (212) 669-0698/0699                    e-mail: thefirm@hillrivkins.com
Website: www.hillrivkinslaw.com

March 6, 2008

<u>Via Federal Express Courier</u>

Praesident des Amtsgerichts Hamburg
Sievekingplatz 1
20335 Hamburg

> Re:  **Martrade Shipping & Transport GmbH v. Sasco GmbH**
> In the United States District Court, Southern District of New York
> Docket No.: 08-cv-01304 (GBD)
> Our File: 29768-KBD/MDW

## <u>REQUEST FOR SERVICE ABROAD OF JUDICIAL DOCUMENTS UNDER HAGUE CONVENTION</u>

Dear Sir/Madam:

We are New York attorneys representing plaintiff Martrade Shipping & Transport GmbH with respect to the above lawsuit pending in the United States District Court, Southern District of New York, to recognize and enforce a foreign arbitral award entered in favor of our client and against the defendant Sasco GmbH, Hohe Bleichen 5, 20354 Hamburg.

In accordance with the Hague Convention for Service Abroad of Judicial of Extrajudicial Documents please find the following documents:

- Form Request for Service Abroad of Judicial or Extrajudicial Documents
- Summons (3 copies)
- Complaint (3 copies)
- German Translation of Summons (3 Copies)
- German Translation of Complaint (3 Copies)

We respectfully request that you arrange for service of copies of the Summons and Complaint, in both English language and German versions, on the defendant Sasco GmbH, and return one copy of each to us, along with a completed Certificate of Service, in the enclosed self-addressed stamped envelope.

---

NEW JERSEY
175 North Broadway
South Amboy, NJ 08879-1638
Tel: (732) 838-0300 Fax: (732) 316-2365
e-mail: thefirm@hillrivkins.com

TEXAS
712 Main Street, Suite 1515
Houston, TX 77002-3209
Tel: (713) 222-1515 Fax: (713) 222-1359
e-mail: hillrivkinstexas@hillrivkins.com

CONNECTICUT
60 Quarry Dock Road
Branford, CT 06405-4654
Tel: (203) 315-9274 Fax: (203) 315-9264
e-mail: hillrivkinsct@snet.net

CALIFORNIA
Hill Rivkins/Brown & Associates
11140 Fair Oaks Boulevard, Suite 100
Fair Oaks, CA 95628-5126
Tel: (916) 535-0263 Fax: (916) 535-0268
e-mail: thefirm@brnlaw.com

**U.S. Department of Justice**
United States Marshals Service



# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou*
*extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant*<br><br>Martrade Shipping & Transport GmbH<br>through its attorneys<br>Hill Rivkins & Hayden LLP<br>45 Broadway, 15th Floor<br>New York, New York 10006<br>USA | Address of receiving authority<br>*Adresse de l'autorité destinataire*<br><br>Praesident des Amtsgerichts Hamburg<br>Sievekingplatz 1<br>20335 Hamburg |
|---|---|

The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity
with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
    (identity and address)
*Le requérant soussigné a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous*
*énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au*
*destinataire, à savoir:*
    *(identité et adresse)*

Sasco GmbH
Hohe Bleichen 5, 20354, Hamburg, Germany

☑ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
    *a) selon les formes légales (article 5 alinéa premier, lettre a).*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
    *b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
    *c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes
with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec*
*l'attestation figurant au verso.*

List of documents
*Enumération des pièces*

Summons - English
Complaint - English
Summons - German Free Translation
Complaint - German Free Translation

Done at New York    , the 6 MAR 2008
*Fait à*                    , *le*

Signature and/or stamp
*Signature et/ou cachet*

Christopher M. Panagos    *Christopher M. Panagos*

---

*Delete if inappropriate
Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

# CERTIFICATE
## ATTESTATION

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1) que la demande a été exécutée*
-- the (date) -- *le (date)* _____
-- at (place, street, number) - *à (localité, rue, numéro)*

_____

-- in one of the following methods authorized by article 5:
-- *dans une des formes suivantes prévues à l'article 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
*a) selon les formes légales (article 5, alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method:
*b) selon la forme particulière suivante:* _____

☐ (c) by delivery to the addressee, who accepted it voluntarily.*
*c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

- (identity and description of person)
- *(Identité et qualité de la personne)*

_____

- relationship to the addressee family, business or other
- *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pieces renvoyées*

_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

_____
_____

Done at _____, the
*Fait à* _____, *le* _____

Signature and/or stamp
*Signature et/ou cachet*

# SUMMARY OF THE DOCUMENT TO BE SERVED
## *ÉLÉMENTS ESSENTIELS DE L'ACTE*

**Convention on the service abroad of judicial and extrajudicial documents In civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa quatre)*

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*

United States District Court, Southern District of New York, 500 Pearl Street, New York, NY 10007, USA

**Particulars of the parties:**
*Identité des parties:*

Martrade Shipping & Transport GmbH v. Sasco GmbH

## JUDICIAL DOCUMENT
### *ACTE JUDICIA IRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

(1) Summons and (2) Complaint initiating civil lawsuit

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

Action to Recognize and Enforce Foreign Arbitral Award

**Date and place for entering appearance:**
*Date et lieu de la comparution:*

20 days after service at: United States Courthouse, 500 Pearl Street, New York, NY 10006, USA

**Court which has given judgment**:**
*Juridiction qui a rendu la décision:*

No Judgment has been entered yet

**Dale of judgment**:**
*Date de la décision:*

No Judgment has been entered yet

**Time limits stated in the document**:**
*Indication des délais figurant dans l'acte:*

Defendant's Answer is due 20 days after service.

## EXTRAJUDICIAL DOCUMENT
### *ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

**Time limits stated in the document:**
*Indication des délais figurant dans l'acte:*

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

MARTRADE SHIPPING & TRANSPORT GmbH,
Plaintiff,

V.

SASCO Gmbh,
Defendant.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

**08 CV 01304**

TO: (Name and address of Defendant)

SASCO GmbH
Hohe Bleichen 5
20354 Hamburg, Germany

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

HILL RIVKINS & HAYDEN LLP
45 Broadway, 15th Floor
New York, NY 10006

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

_____
CLERK

_____
(By) DEPUTY CLERK

DATE   FEB 0 8 2008

Michael D. Wilson (MW5633)
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiff
45 Broadway
New York, New York 10006
(212) 669-0600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

MARTRADE SHIPPING & TRANSPORT
GmbH,

                    Plaintiff,

          - Against -

SASCO GmbH,

                    Defendants.

- - - - - - - - - - - - - - - - -x

Index No.:

08 CV _____ (        )

<u>VERIFIED COMPLAINT</u>

Plaintiff, Martrade Shipping & Transport GmbH ("Martrade"), by and through its attorneys, Hill Rivkins & Hayden LLP, as and for its Verified Complaint against the above named defendant alleges upon information and belief as follows:

1. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for a breach of a maritime contract. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1333 and, alternatively, 28 U.S.C. §1331 as this action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201 *et seq*. and/or the Federal Arbitration Act, 9 U.S.C. §1, *et seq*.

2. At and during all material times hereinafter mentioned, plaintiff Martrade was and now is a foreign business entity organized and existing by virtue of foreign law with an office and place of business at Jan-Wellem Platz 3, 40212 Dusseldorf, Germany.

3. At and during all material times hereinafter mentioned, defendant SASCO GmbH ("SASCO") was and now is a foreign business entity organized and existing by virtue of foreign law with an office and place of business at Hohe Bleichen 5, 20354 Hamburg, Germany.

4. On or about November 15, 2005, SASCO, as charterer, and plaintiff Martrade, as owner, entered into charter party on the Gencon 1994 Box Lay Out form for the charter of the vessel CAPTAIN GEORGE TSANGARIS.

5. The aforementioned charter party provided for arbitration of any disputes arising under the charter in ond, with English law to apply.

6. Disputes arose under the subject charter party regarding a claim by plaintiff for damages for detention of the vessel incurred at Odessa, Russia due to repairs to the vessel for damage to the vessel caused by loading stevedores.

7. On May 2, 2006, plaintiff appointed David Farrington of Buckinghamshire, England, a member of the London Maritime

Arbitrators Association, as its arbitrator pursuant to the charter party arbitration clause. Despite the natice of said appointment, defendant failed to appoint an arbitrator. On December 6, 2006, arbitrator David Farrington accepted appointment as Sole Arbitrator pursuant to section 17(2) of the English Arbitration Act.

8. Following written submissions by both plaintiff and defendant and after due consideration, the Sole Arbitrator issued a First Final Award dated September 14, 2007 in favor of plaintiff Martrade in the principal amount of $88,802.08, plus interest on the principal amount at a rate of 8.25% compounded quarterly from December 31, 2005 until payment, presently totaling in excess of $15,570.00, plus costs, which are estimated to be in excess of $45,000.00. The total sum, inclusive of interest, is today calculated at U.S. $149,552.00. A true and accurate copy of the Award is attached as Exhibit 1.

9. Despite due demand, the amounts awarded to Martrade remain due and outstanding and interest continues to accrue.

10. This action is brought to obtain jurisdiction over defendant SASCO to enforce the arbitration Award rendered in London as well as to obtain security.

11. After investigation, defendant SASCO cannot be "found" in this District for purposes of and as delineated in Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims

3

of the Federal Rules of Civil Procedure. Plaintiff is informed that defendant SASCO has, or will shortly have, assets within this District, including but not limited to, cash, funds, escrow funds, credits, wire transfer, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and sub-charter hire, at or being transferred and/or wired to, from or through:

JPMorgan Chase Bank NA, Citibank NA, American Express Bank Ltd., Bank of America, Bank of New York, Deutsche Bank, HSBC, BNP Paribas, Wachovia Bank NA, ABN Amro, Atlantic Bank of NY, Standard Chartered Bank, Bank of Communications, The Bank of East Asia (USA) NY, Bank of China, Shanghai Commercial Bank Ltd., Bank of Tokyo-Mitsubishi, Barclays Bank, Credit Suisse, Rabobank, Wells Fargo Bank, US Bank, UBS,

and/or other garnishees as further investigation may uncover.

12. The total amount sought to be attached by plaintiff pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims is **$149,552.00**, plus interest and costs, calculated as follows:

(i) Final Award in the amount of US $88,802.08 plus interest at 8.25% compounded quarterly from December 31, 2005 in the present amount of $15,750.00 for a total presently due and owing of $104,552.00.

(ii) Award of Assessed Costs in the amounts of $45,000.00 for a total due and owing of **$149,552.00**.

4

**W H E R E F O R E**, plaintiff Martrade, prays:

1. That process in due form of law according to the practice of this Court may issue against defendant SASCO, citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claim, plus interest, costs and attorneys' fees;

2. That if defendant SASCO GmbH cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, that all assets of defendant up to and including **US $149,552.00** be restrained and attached, including but not limited to cash, funds, escrow funds, credits, wire transfer, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, at or being transferred and/or wired to, from or through:

JPMorgan Chase Bank NA, Citibank NA, American Express Bank Ltd., Bank of America, Bank of New York, Deutsche Bank, HSBC, BNP Paribas, Wachovia Bank NA, ABN Amro, Atlantic Bank of NY, Standard Chartered Bank, Bank of Communications, The Bank of East Asia (USA) NY, Bank of China, Shanghai Commercial Bank Ltd., Bank of Tokyo-Mitsubishi, Barclays Bank, Credit Suisse, Rabobank, Wells Fargo Bank, US Bank, UBS,

and/or other garnishees upon who a Writ of Maritime Attachment and Garnishment may be served;

3. And for such other and further relief as this Court may deem just and proper.

Dated:      New York, New York
            February 8, 2008

                        HILL RIVKINS & HAYDEN LLP
                        Attorneys for Plaintiff

            By: _____
                        Michael D. Wilson (MW5633)
                        45 Broadway
                        New York, New York 10006
                        (212) 669-0600

## VERIFICATION

I, Michael D. Wilson, hereby affirm as follows:

1. I am an attorney and member of the firm Hill Rivkins & Hayden LLP, attorneys for plaintiff Martrade Shipping & Trading, GmbH. I have prepared and read the foregoing Verified Complaint and know the contents thereof and, the same is true to the best of my knowledge, information and belief.

2. The sources of my knowledge, information and belief are documents provided by our clients and our discussions with them.

3. As plaintiff is a foreign business entity and none of its officers is located in the Southern District of New York, this verification is made by me as counsel of record.

I hereby affirm that the foregoing statements are true and correct.

Dated:    New York, New York
          February 8, 2008


                                    _____
                                    Michael D. Wilson (MW5633)



29768\VerifiedComplaint



7

IN THE MATTER OF THE ARBITRATION ACT 1996

AND IN THE MATTER OF AN ARBITRATION

BETWEEN:



MARTRADE SHIPPING & TRANSPORT GmbH of Dusseldorf

Claimants (Disponent Owners)

and

SASCO GmbH of Hamburg

Respondents (Charterers)

"Capt. George Tsangaris"; charterparty dated 25th November 2005

---

## FIRST FINAL AWARD

---

**WHEREAS**

1. By a charterparty on an amended Gencon 1994 Box Layout form dated 25th November 2005 ("the charterparty) it was agreed between Martrade Shipping & Chartering GmbH as Disponent Owners ("the Claimants") and Sasco GmbH as Charterers ("the Respondents") that the Claimants' vessel "Capt George Tsangaris" ("the vessel") would proceed to Odessa and there load a part cargo of steel billets for carriage to and discharge at Karachi.

2. The charterparty provided for arbitration in London with English law to apply. On 2nd May 2006 the Claimants appointed me, David Farrington, of Chorley Farm House, West Wycombe, Buckinghamshire HP14 4BS to act as Arbitrator. I

EXHIBIT 1

am a Full Member of the London Maritime Arbitrators Association and a Member of the Baltic Exchange. The Claimants' solicitors, Winter Scott of London, on 19th April 2006 through brokers gave to the Respondents formal notice of my appointment as Arbitrator and called upon the Respondents to appoint an Arbitrator. The brokers confirmed that the formal notice had been forwarded to the Respondents. The Respondents failed to appoint an Arbitrator. Accordingly, on 2nd December 2006 I accepted appointment as Sole Arbitrator pursuant to section 17(2) of the Arbitration Act 1996. The seat of this arbitration is England.

3. The dispute referred to me as Arbitrator was a claim by the Claimants against the Respondents for damages for detention in the sum of US$115,955.53 which, said the Claimants, had been incurred at Odessa. The detention of the vessel arose from a delayed departure which was caused by the need to effect repairs to the vessel because she had been damaged by the failure or negligence of stevedores during loading operations. The Claimants also sought payment of interest and costs. The Respondents made written submissions in which they denied liability. They said that the Claimants' obligation under the charterparty was to use maximum efforts to recover direct from the stevedores. The Respondents also alleged delay by the Claimants in making the claim.

4. Both parties have seen the other's written submissions and the documents attached thereto. They have been given an opportunity of replying to those submissions and documents. My Reasons are attached to this First Final Award and form part of it.

NOW I, DAVID FARRINGTON, having taken upon myself the burden of this reference and having carefully and conscientiously considered the evidence and submissions of the parties, DO MAKE AND PUBLISH THIS MY FIRST FINAL AWARD as follows:

2

(A) **I HOLD AND FIND** that the claim succeeds in the amount of US$88,802.08 and no more.

(B) **I AWARD AND ADJUDGE** that the Respondents shall pay immediately to the Claimants the sum of US$88,802.08 (Eighty Eight Thousand Eight Hundred and Two United States Dollars and Eight Cents) together with interest thereon at the annual rate of 8.25% compounded every three months from 31st December 2005 until payment.

(C) **I FURTHER AWARD AND ADJUDGE** that the Respondents will pay the recoverable costs of the Claimants to be assessed if not agreed on the standard basis. I reserve to myself jurisdiction to assess those costs.

(D) **I FURTHER AWARD AND ADJUDGE** that the Respondents do bear and pay the costs of this First Final Award which **I HEREBY FIX** at £2,100.00 including interlocutory fees, always provided that if the Claimants have in the first instance paid any sum in respect of the costs of this First Final Award they shall be entitled to immediate reimbursement from the Respondents for the sum so paid together with interest on that sum from the date of payment by the Claimants at the rate of 8.75% per annum compounded every three months until the date of reimbursement by the Respondents.

GIVEN under my hand this 14th day of September 2007

......................................                ......................................
David Farrington                                    Witness

3

mv "Capt George Tsangaris"

Charterparty 25th November 2005

## REASONS FOR AND FORMING PART OF THE FIRST FINAL AWARD

1.   This First Final Award arises out of a voyage charter on an amended Gencon 1994 Box Layout form dated 25th November 2005.  There is a claim by Disponent Owners against Voyage Charterers for damages for detention in the amount of US$115,955.53 plus interest and costs. The Respondents contest both liability and quantum.

2.   The claim arises in the following way. The charterparty provided for freight of US$43.00 per tonne Free In. It also provided:

   *"cargo to be loaded/dunnage/stowed/lashed/secured by Shippers stevedores free of expense to the vessel."*

On 12th December 2005, whilst the part cargo of steel billets was being loaded in Odessa, a bundle was dropped by the stevedores. The result was damage to and a puncture of the port-side tank top in no 7 Hold, and damage to no 4 fuel oil tank ("the physical damage"). The vessel completed loading of the Respondents' cargo on the same day. Loading of other cargo was completed at 17.30 hours on 15th December. The vessel was then scheduled to sail.

4

3.   However, before the vessel could sail the physical damage had to be repaired. The stevedores arranged and paid for the repairs to be effected. The repairs were completed at 23.00 on 18th December. The vessel was cleared outwards by the Odessa authorities at 01.00 on 19th December and actually sailed at 01.40 the same day.

4.   The Claimants say that the vessel was detained by reason of the physical damage and consequent repairs from 20.00 on 14th December until 01.40 on 19th December, a period of 4.24 days. They say that the vessel was detained as a result of a breach of charterparty by the Respondents or someone for whom they were responsible (in this case, the shippers' stevedores). The Claimants, therefore, seek damages for detention. The damages are claimed at two rates. For the period up to 15th December at the rate of US$35,000 per day in accordance with the charterparty rate of demurrage; thereafter at the rate of US$27,500 per day which (according to the Claimants) is the daily rate of hire and expenses which the Claimants were paying in their capacity as time charterers under the head time charter.

5.   There was a dispute between the parties over whether the charterparty contained the following provision as a separate paragraph:

      *"owise detention to apply at the rate of US$35,000 – day/rata..."*

That was a provision upon which the Claimants relied. The parties were agreed that the charterparty contained the following words:

*"Stevedores damages, if any, to be settled directly between owners and stevedores w/out chrts interference. In case owners are unable to get such settlement, chrts to by all means assist in getting this settlement and remain ultimately responsible."*

For reasons which will become apparent, I do not consider that it is necessary for me to decide whether the first words quoted in this paragraph were actually part of the charterparty. As appears from the second quotation the parties are agreed that if the Claimants were unable to obtain settlement of the stevedore damages, the Respondents were to remain ultimately responsible.

6.    The Respondents said, however, that the absence from the charterparty of detention provisions meant that they had no liability for the delay caused whilst the physical damage were being repaired. They, therefore, wished to confine the meaning of the words "stevedore damages" to the physical damage. In certain circumstances it is true that the absence of a contractual provision can be determinative of parties' rights and obligations, but it does not necessarily follow that such an absence means that a party is relieved from liability. In this reference there can be little doubt that the loading (free in terms) was at the risk and expense of the Respondents. In breach of

charterparty the physical damage was caused by the admitted failure or negligence of the stevedores. I can see no need to construe the meaning of the words "stevedore damages" so that they only relate to the physical damage. It is obvious that there will be occasions (such as occurred at Odessa) when the physical damage is such as to require immediate repair which could delay either further operations on the vessel or a departure. It would be quite illogical if an owner was expected to bear the cost of delay without the opportunity to seek recompense elsewhere. Indeed, such an outcome would be inconsistent with a charterparty regime which imposes the expense and risk of loading upon charterers.

7.   Two types of damage were caused by that failure or negligence. First, the physical damage was caused. That damage was repaired by and paid for by the stevedores. There is, therefore, no claim in respect of it. Second, there are the financial damages which in this reference have been limited to the time for which the vessel was delayed whilst the physical damages were repaired. In short, a claim for damages for detention. The Respondents do not dispute that the vessel's departure was delayed because of the need for the vessel to be repaired. I, therefore, find that the vessel was delayed because of that need.

8.   Time sheets and a Statement of Facts were in evidence. It is clear that loading of other cargo was not completed until 17.30 on 15th December. I consider that the delay commenced at that point of time, and not at 20.00 on 14th February,

for which the Claimants contended. The repairs were complete at 23.00 on 18th December. I consider that to be the point in time when the delay ceased. The vessel was, therefore, detained for 3 days 5 hours and 30 minutes. The period between 23.00 on 18th December and 01.40 on 19th December was occupied by the normal operations of obtaining port clearance – operations which would in any event have had to have been undertaken if the vessel had been able to sail on a previous day.

9.   The Respondents submit that they are not liable because the Claimants were under an obligation to exercise "maximum endeavour" to recover from the stevedores all amounts due. Unfortunately for the Respondents, there are no such words in the relevant clause. In fact the clause required the Respondents "to by all means assist" the Claimants. So, if anything, the maximum endeavour was required on the part of the Respondents – a commercially sound approach in the context of a loading which was undertaken at their risk and expense. The evidence was that there were numerous discussions between the parties and that neither the Claimants nor the Respondents were able to make progress with the stevedores on the question of compensation for the delay in sailing. The Respondents say that they can do no more despite what they describe as their efforts to assist the Claimants in every way.

10.  I am satisfied on the evidence that the Respondents have used all means they can to assist the Claimants. However, the use of those means did not discharge

the Respondents from liability because, as the words of the clause state, the Respondents remain liable. Those words can only mean that if the Claimants were not successful in effecting a recovery from the stevedores, then the Respondents would pay. Such a construction makes sense in the context of a charterparty on free in terms.

11.   The other ground of defence relied upon is an allegation that the Claimants delayed for five months before presenting the claim for damages for detention. Even if the Claimants had delayed (and I find that they did not because an invoice was sent to the Respondents on 31ˢᵗ December 2005), delay in itself is not a ground of defence. In any event, if the Claimants were trying to obtain recompense direct from the stevedores, then some delay was inevitable

12.   I have found in paragraph 8 above that the vessel was delayed for 3 days 5 hours and 30 minutes. Damages for detention are to be calculated by reference to the market rate of the vessel. In the absence of evidence as to the market rate, it is permissible to use the rate of demurrage or hire given in a charter – see The Timna [1971] 2 Lloyd's Rep. 91. Although the demurrage rate was US$35,000 per day, the Claimants only seek that rate for the period of 19 hours 30 minutes preceding 17.30 on 15ᵗʰ December. I have, however, declined to include those 19 hours 30 minutes in the detention claim. For time after 17.30 on 15ᵗʰ December the Claimants seek to recover at the lower rate of US$27,500 which they say as time charterers they were paying to the

registered owners. The relevant time charter was in evidence. For the period between 17.30 on 15th December and 23.00 on 18th December I allow damages at the rate of US$27,500 per day or pro rata. The amount awarded is US$88,802.08. I have awarded interest at a rate and in a manner which is consistent with the practice in London maritime arbitration.

13. The Claimants have been successful in this arbitration reference and are, therefore, entitled to their recoverable costs to the standard basis. I reserve to myself power to assess those costs. It is also appropriate that the Respondents should pay the fees on the First Final Award and, if those fees have been paid by the Claimants, then to make immediate reimbursement to the Claimants of that payment.

........................................

VEREINIGTE STAATEN AMTSGERICHT-
SÜDLICHER BEZIRK NEW YORK

Martrade Shipping & Transport          AUFRUF IN EINEM
GmbH                                   ZIVILRECHTSSTREIT

      Zivilkläger,

v.

                              FALL-ZAHL: 08 cv-01304

Sasco GmbH
      Beklagtes.

: (Name des Beklagten)

              SASCO GMBH
              Hohe Bleichen 5
              20354, Hamburg, Deutschland

WERDEN SIE HIERMIT, ZUSAMMENGERUFEN und angefordert nach ZIVILKLÄGER zu
dienen RECHTSANWALT (Name und Adresse)

              HILL RIVKINS & HAYDEN LLP
              45 Broadway
              New York, New York 10006

eine Antwort zur Beanstandung, die hiermit nach Ihnen gedient wird,
ihnen 20 Tage nach dem Service dieses Aufrufs nach Ihnen, exklusiv
vom Tag des Services. Wenn Sie so tun nicht können, wird Urteil durch
Rückstellung gegen Sie für die Entlastung genommen, die in der
Beanstandung verlangt wird. Sie müssen Ihre Antwort mit der Sekretärin
dieses Gerichtes innerhalb eines angemessenen Zeitabschnitts nach
Service auch einordnen.

J. MICHAEL McMAHON

_____          8. Februar 2008
SEKRETÄRIN                           DATIEREN Sie

Latecia Curtis

_____
(vorbei) ABGEORDNETEN CLERK

Michael D. Wilson (MW5633)
Hill RIVKINS & HAYDEN LLP
Rechtsanwälte für Zivilkläger
45 Broadway
New York, New York 10006
(212) 669-0600

VEREINIGTE STAATEN AMTSGERICHT-
SÜDLICHER BEZIRK VON NEW YORK
-- -- -- -- -- -- -- -- -- - - - - - x
MARTRADE VERSCHIFFEN u. TRANSPORT
GmbH,

                    Zivilkläger,               Index-Nr.:
                                               08 CV 1304 (        )

        - Gegen -

                                               ÜBERPRÜFTE BEANSTANDUNG

SASCO GmbH,
                    Beklagte.
-- -- -- -- -- -- -- -- - - - - - - x


    Der Zivilkläger, Martrade Shipping & Transport, GmbH sind

(„Martrade"), durch und durch seine Rechtsanwälte, Hügel Rivkins u.

Hayden LLP, wie und für seine überprüfte Beanstandung gegen das oben

genannte Beklagte behauptet nach Informationen und Glauben, wie folgt:


    1. Dieses ist eine Admiralität oder ein Seeanspruch innerhalb der

Bedeutung von Richtlinie 9 (h) der Bundesrichtlinien des

Zivilverfahrens dadurch, daß es einen Anspruch für einen Bruch eines

Seevertrages miteinbezieht. Dieses Gericht hat Themajurisdiktion gemäß

28 U.S.C. §1333 und wechselweise 28 U.S.C. §1331 als diese Tätigkeit

entsteht unter der New York Versammlung über die Anerkennung und die

Durchführung der fremden Schiedssprüche, 9 U.S.C. §201 und folgendes

und/oder die Bundesschlichtung Tat, 9 U.S.C. §1 und folgendes


    2. Zu und während allen materiellen Malen, die im folgenden

erwähnt wurden, war Zivilkläger Martrade und ist jetzt eine fremde

Wirtschaftseinheit, die organisiert wurde und aufgrund des fremden

Gesetzes mit einem Büro und einem Geschäftssitz bei Jan.-Wellem Platz 3, 40212 Dusseldorf, Deutschland bestanden war.

    3. Zu und während allen materiellen Malen, die im folgenden erwähnt wurden, war das GmbH Beklagte SASCO („SASCO") und ist jetzt eine fremde Wirtschaftseinheit, die organisiert wurde und aufgrund des fremden Gesetzes mit einem Büro und einem Geschäftssitz bei Hohe Bleichen 5, 20354 Hamburg, Deutschland bestanden war.

    4. Oder über am 15. November 2005 breiten SASCO, als Charterer und Zivilkläger Martrade, wie Inhaber, angemeldet in Charter-Partei auf dem Gencon 1994 Kasten Form für die Charter des Behälter KAPITÄNS GEORGE TSANGARIS aus.

    5. Die vorher erwähnte Charter-Partei versah für Schlichtung aller möglicher Debatten, die unter der Charter im ond, mit englischem Gesetz entstehen, um zuzutreffen.

    6. Debatten entstanden unter der vorbehaltlichen Charter-Partei betreffend ist einen Anspruch durch Zivilkläger für Beschädigungen für Verzögerung des Behälters, der in Odessa genommen wurde, Rußland wegen der Reparaturen zum Behälter für Beschädigung des Behälters, der indem sie Stevedores verursacht wurde, luden.

    7. Am 2. Mai 2006 ernannte Zivilkläger David Farrington von Buckinghamshire, England, ein Mitglied der London Seeschiedsrichter-Verbindung, als sein Schiedsrichter gemäß der Charter-Partei-Schiedsklausel. Trotz des natice der besagten Verabredung, konnte Beklagtes einen Schiedsrichter ernennen nicht. Am 6. Dezember 2006 nahm Schiedsrichter David Farrington Verabredung als alleiniger

Schiedsrichter gemäß Abschnitt 17 (2) der englischen Schlichtung Tat an.

8. Folgende schriftliche Unterordnungen durch Zivilkläger und Beklagtes und nach passender Betrachtung, der alleinige Schiedsrichter gaben einen ersten abschließenden Preis heraus, der zugunsten des Zivilklägers Martrade in der Hauptmenge von $88.802.08, plus Interesse auf der Hauptmenge mit einer Rate von 8.25% vom 14. September 2007 ist, zusammensetzten Vierteljahresschrift ab dem 31. Dezember 2005 bis die Zahlung und momentan zählten über $15.570.00, plus Kosten zusammen, die geschätzt werden, um über $45.000.00 zu sein. Die Gesamtsumme, die vom Interesse einschließlich ist, wird heute an US errechnet $149.552.00. Eine zutreffende und genaue Kopie des Preises wird als Ausstellung 1 angebracht.

9. Trotz der passenden Nachfrage bleiben die Mengen, die Martrade zugesprochen werden, passend und hervorragend und Interesse fährt fort anzufallen.

10. Dieses Klage wird eingebracht, um Jurisdiktion über Beklagtem SASCO zu erreichen, um den Schlichtung Preis zu erzwingen, der in London sowie übertragen wird, um Sicherheit zu erreichen.

11. Nach Untersuchung kann Beklagtes SASCO nicht in diesem Bezirk „gefunden werden" zwecks und wie in Richtlinie B der zusätzlichen Richtlinien für bestimmte Admiralität und der Seeansprüche der Bundesrichtlinien des Zivilverfahrens abgegrenzt worden. Zivilkläger ist informiert, daß Beklagtes SASCO hat, oder wird kurz, Werte innerhalb dieses Bezirkes haben und einschließt, aber begrenzt nicht auf, stellt Bargeld, Kapital, übertragungsurkundekapital, Gutschriften,

3

Leitung übertragung, elektronische Kapitaltransfers, Konten, Akkreditive, Frachten, Vor-frachten, Chartermiete und Vor-charter an, an oder bringend und/oder zu, von verdrahtet oder durch:

JPMorgan Verfolgung-Bank Na, Citibank Na, American Express Bank Ltd., Bank von Amerika, Bank von New York, von Deutsche Bank, von HSBC, von BNP Paribas, von Wachovia Bank Na, von ABN Amro, von atlantischer Bank von NY, von gemieteter Standardbank, von Bank von Kommunikationen, von Bank von Ostasien (USA) NY, von Bank von China, Shanghai von Handelsbank Ltd., von Bank von Tokyo-Mitsubishi, von Barclays Bank, von Gutschrift Suisse, von Rabobank, von Wells Fargo Bank, VON US Bank, von UBS und/oder von anderem garnishees, während weitere Untersuchung aufdecken kann.

12. Die Gesamtmenge suchte, vom Zivilkläger gemäß Richtlinie B der zusätzlichen Richtlinien für bestimmte Admiralität angebracht zu werden und Seeansprüche ist $149.552.00, Plusinteresse und die Kosten, errechnet, wie folgt:

(i) Abschließender Preis in der Menge US $88.802.08 des Plusinteresses bei 8.25% setzte Vierteljahresschrift ab dem 31. Dezember 2005 in der anwesenden Menge von $15.750.00 für eine passende Gesamtmenge momentan und das Verdanken von $104.552.00 zusammen.

(ii) Preis der festgesetzten Kosten in den Mengen von $45.000.00 für ein totalpassendes und ein Verdanken von $149.552.00.

W H E R E-F O R E, Zivilkläger Martrade, betet:

1. Dieser Prozeß in der passenden Form des Gesetzes entsprechend der Praxis dieses Gerichtes kann gegen Beklagtes SASCO herausgeben und es zitieren, um zu erscheinen und das vorangehende zu beantworten und

4

ausfallen, das eine Rückstellung gegen es für die Hauptmenge des Anspruches, plus Interesse, der Kosten und Rechtsanwälte' der Gebühren genommen wird;

2. Das, wenn das GmbH Beklagte SASCO nicht innerhalb dieses Bezirkes gemäß Richtlinie B der zusätzlichen Richtlinien für bestimmte Admiralität und Seeansprüche gefunden werden kann, dieses alle Werte des Beklagten bis einschliesslich US $149.552.00 wird zurückgehalten und angebracht und schließt aber begrenzt nicht auf Bargeld, Kapital, übertragungsurkundekapital, Gutschriften, Leitung übertragung, elektronische Kapitaltransfers, Konten, Akkreditive, Frachten, Vor-frachten, Chartermiete, Vor-charter Miete, an oder gebracht und/oder verdrahtet zu, von oder durch ein:

JPMorgan Verfolgung-Bank Na, Citibank Na, American Express Bank Ltd., Bank von Amerika, Bank von New York, von Deutsche Bank, von HSBC, von BNP Paribas, von Wachovia Bank Na, von ABN Amro, von atlantischer Bank von NY, von gemieteter Standardbank, von Bank von Kommunikationen, von Bank von Ostasien (USA) NY, von Bank von China, Shanghai von Handelsbank Ltd., von Bank von Tokyo-Mitsubishi, von Barclays Bank, von Gutschrift Suisse, von Rabobank, von Wells Fargo Bank, VON US Bank, von UBS und/oder von anderem garnishees nach, wem ein Writ des Seezubehörs und des Schmucks gedient werden kann;

3. Und für solches anderes und weitere Entlastung wie dieses Gericht kann gerecht und korrekt meinen.

Datiert:     New York, New York
             8. Februar 2008

                              HILL RIVKINS & HAYDEN LLP
                              Rechtsanwälte für Zivilkläger


            Durch: _____

Michael D. Wilson (MW5633)
45 Broadway
New York, New York 10006
(212) 669-0600

ÜBERPRÜFUNG

I, Michael D. Wilson, bestätigen hiermit, wie folgt:

1. Ich bin ein Rechtsanwalt und ein Mitglied des festen Hügels Rivkins u. ein Hayden LLP, die Rechtsanwälte für das Zivilkläger Martrade Verschiffen u. Handeln, GmbH. Ich habe den Inhalt davon vorbereitet und lese die vorangehende überprüfte Beanstandung und kenne und, der selbe ist zum besten meines Wissens, Informationen und Glaubens zutreffend.

2. Die Quellen meines Wissens, Informationen und Glaubens sind die Dokumente, die von unseren Klienten und von unseren Diskussionen mit ihnen versehen werden.

3. Da Zivilkläger eine fremde Wirtschaftseinheit ist und keiner seiner Offiziere im südlichen Bezirk von New York ist, wird diese überprüfung von mir als Ratschläge der Aufzeichnung gebildet.

Ich bestätige hiermit, daß die vorangehenden Aussagen zutreffend und korrekt sind.

Datiert:   New York, New York
           8. Februar 2008

_____
        Michael D. Wilson (MW5633)


29768 \ VerifiedComplaint

7

BEZÜGLICH DER SCHLICHTUNG TAT 1996

UND BEZÜGLICH EINER SCHLICHTUNG

ZWISCHEN:

MARTRADE SHIPPING & TRANSPORT
GmbH von Dusseldorf,

Antragsteller (Disponent Inhaber)

und

SASCO GmbH von Hamburg

Antwortende (Charterers)

„Kapitän. George Tsangaris", charterparty vom 25. November 2005

-----------------------------------
ERSTER ABSCHLIESSENDER PREIS
-----------------------------------

WÄHREND

1. Durch ein charterparty auf einem geänderten Gencon 1994 Kasten-Plan bilden Sie vom 25. November 2005 („das charterparty") es wurde vereinbart zwischen Martrade, das versendet u. chartert GmbH als Disponent Inhaber („die Antragsteller") und, das Gmbh ist als Charterer Sasco („die Antwortenden") die der Antragsteller' Behälter „Kapitän. George Tsangaris" („der Behälter") würde nach Odessa fortfahren und dort eine Teilladung der Stahlbillets für Wagen zu und Entladung bei Karachi laden.

2. Das charterparty versehen für Schlichtung in London mit englischem Gesetz, um zuzutreffen. Am 2. Mai 2006 ernannten die Antragsteller mich, David Farrington, des Chorley Bauernhof-Hauses, WestWycombe, Buckinghamshire HP14 4BS, um als Schiedsrichter zu dienen. Ich bin ein vollwertiges Mitglied der London Seeschiedsrichter-Verbindung und ein Mitglied des baltischen Austausches. Anwälte der Antragsteller', Winter Scott von London, am 19. April 2006 durch Vermittler gaben zur formalen Nachricht der Antwortenden meiner Verabredung als Schiedsrichter und ersuchten um die Antwortenden, um einen Schiedsrichter zu ernennen. Die Vermittler bestätigten, daß den Antwortenden die formale Nachricht nachgeschickt worden war. Die

Antwortenden konnten einen Schiedsrichter ernennen nicht. Dementsprechend am 2. Dezember 2006 nahm ich Verabredung als alleiniger Schiedsrichter gemäß Abschnitt 17 (2) der Schlichtung Tat 1996 an.  Der Sitz dieser Schlichtung ist England.

3. Die Debatte bezog sich auf mich, da Schiedsrichter ein Anspruch durch die Antragsteller gegen die Antwortenden für Beschädigungen für Verzögerung in der Summe von US war auf $115.955.53, die, die Antragsteller sagten, waren in Odessa genommen worden.  Die Verzögerung des Behälters entstand aus einer verzögerten Abfahrt, die durch die Notwendigkeit, Reparaturen zum Behälter zu bewirken verursacht wurde, weil sie durch den Ausfall oder die Nachlässigkeit von Stevedores während der Ladenbetriebe beschädigt worden war.  Die Antragsteller suchten auch Zahlung des Interesses und der Kosten.  Die Antwortenden bildeten schriftliche Unterordnungen, in denen sie Verbindlichkeit verweigerten.  Sie sagten, daß Verpflichtung der Antragsteller' unter dem charterparty, maximale Bemühungen zu verwenden, direktes von den Stevedores zu erholen war.  Die Antwortenden behaupteten auch verzögert durch die Antragsteller, wenn sie den Anspruch bildeten.

4. Beide Parteien haben die anderen schriftlichen Unterordnungen und die Dokumente gesehen, die dazu angebracht werden.  Sie sind eine Gelegenheit des Antwortens auf jene Unterordnungen und Dokumente gegeben worden.  Meine Gründe werden zu diesem ersten abschließenden Preis und zu Formteil von ihm angebracht.

JETZT I, DAVID FARRINGTON, nachdem siegenommen nach mich die Belastung dieses Hinweises und den Beweis und siegenommen hatten die Unterordnungen der Parteien sorgfältig und gewissenhaft, betrachtend, BILDEN UND VERÖFFENTLICHEN DIESEN MEINEN ERSTEN ABSCHLIESSENDEN PREIS, wie folgt:

(A) ICH HALTE UND FINDE, daß der Anspruch mit der Menge von $88.802.08 und nicht mehr folgt.

(B) ICH SPRECHE zu UND ENTSCHEIDE, daß die Antwortenden den Antragstellern sofort zahlen, welche die Summe von US $88.802.08 (achtzig acht tausend acht hundert und zwei Vereinigte Staaten Dollar

2

und acht Cents) zusammen mit Interesse darauf mit der jährlichen Rate
von 8.25% alle drei Monate ab dem 31. Dezember 2005 bis Zahlung
zusammensetzte.

(C) ICH WEITER SPRECHE zu UND ENTSCHEIDE, daß die Antwortenden die
wiedergutzumachenden Kosten der festgesetzt zu werden zahlen
Antragsteller, wenn sie nicht über die Standardgrundlage einig gewesen
werden.  Ich hebe zu mich die Jurisdiktion auf, zum jener Kosten
festzusetzen.

(D) ICH WEITER SPRECHE zu UND ENTSCHEIDE, daß die Antwortenden tragen
und die Kosten dieses ersten abschließenden Preises zahlen, die ICH
HIERMIT AN £2,100.00 einschließlich gesprächsweise Gebühren REGELE,
immer, vorausgesetzt daß, wenn die Antragsteller im ersten Fall
irgendeine Summe in Bezug auf die Kosten dieses ersten abschließenden
Preises gezahlt haben, den sie zur sofortigen Vergütung von den
Antwortenden für die Summe erlaubt werden, die so zusammen mit
Interesse auf dieser Summe vom Zahlungsdatum von den Antragstellern mit
der Rate von 8.75% zusammensetzten gezahlt wird pro Jahr, alle drei
Monate bis das Datum der Vergütung durch die Antwortenden.

GEGEBEN unter meiner Hand dieser 14. Tag von September 2007

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

David Farrington                    Zeugen Sie

3

Millivolt „Capt George Tsangaris"

Charterparty 25. November 2005

GRÜNDE FÜR UND TEILS DARSTELLEN TEILS DARSTELLEN DES ERSTEN ABSCHLIESSENDEN PREIS

1. Dieser erste abschließende Preis entsteht aus einer Reisecharter auf einer geänderten vom 25. November 2005 Gencon 1994 Kasten-Planform heraus. Es gibt einen Anspruch durch Disponent Owners gegen Reise-Charterer für Beschädigungen für Verzögerung in der Menge von US$115,955.53 plus Interesse und Kosten. Die Antwortenden wetteifern Verbindlichkeit und Menge.

2. Der Anspruch entsteht folgendermaßen. Das charterparty frei bereitgestellt worden für Fracht von US$43.00 pro Tonne inch. Es stellte auch zur Verfügung:

"*die geladen zu werden/Stauholz Ladung/verstaute/gepeitscht/mit den Shippers Stevedores befestigt, die an dem Behälter kostenfrei sind.*"

 Am 12. Dezember 2005, während die Teilladung der Stahlbillets in Odessa geladen wurde, wurde ein Bündel von den Stevedores fallengelassen. Das Resultat war Beschädigung und ein Durchbohren der Torseite Behälteroberseite im Nr. Einfluß 7 und Beschädigung des Nr. 4 Heizölbehälter („die körperliche Beschädigung"). Der Behälter führte Laden der Antwortenden' Ladung am gleichen Tag durch. Laden anderer Ladung wurde bei 17.30 Stunden am 15. Dezember durchgeführt. Der Behälter wurde dann festgelegt, um zu segeln.

3. Jedoch bevor der Behälter segeln könnte, mußte die körperliche Beschädigung repariert werden. Die Stevedores geordnet worden und gezahlt, damit die Reparaturen bewirkt werden können. Die Reparaturen wurden bei 23.00 am 18. Dezember durchgeführt. Der Behälter war löschte außerhalb durch die Odessa Behörden bei 01.00 am 19. Dezember und segelte wirklich bei 01.40 der gleiche Tag.

4. Die Antragsteller sagen, daß der Behälter aufgrund der körperlichen Beschädigung und der konsequenten Reparaturen von 20.00 am 14. Dezember

4

bis 01.40 am 19. Dezember zurückgehalten wurde, eine Periode von 4.24
Tagen.  Sie sagen, daß der Behälter resultierend aus einem Bruch von
charterparty von den Antwortenden oder von jemand für zurückgehalten
wurde, wem waren sie verantwortlich (in diesem Fall, die Verlader'
Stevedores).  Die Antragsteller suchen folglich Beschädigungen für
Verzögerung.   Die Beschädigungen werden mit zwei Rate behauptet.
Während der Periode bis zu 15. Dezember mit der Rate von US$35,000 pro
Tag in übereinstimmung mit der charterparty Rate der überliegezeit;
danach mit der Rate von US$27,500 pro Tag, das (nach Ansicht der
Antragsteller) die tägliche Rate der Miete und Unkosten sind, die die
Antragsteller in ihrer Kapazität wie Zeitcharterer unter der
Hauptzeitcharter zahlten.

5. Es gab eine Debatte zwischen dem Parteiüberschuß, ob das
charterparty die folgende Bestimmung enthielt, wie ein
unterschiedlicher Punkt:

*"owise Verzögerung, zum mit der Rate von US$35,000 - Tag/rata
zuzutreffen…"*

 das eine Bestimmung war, unter der die Antragsteller bauten.  Die
Parteien wurden vereinbart, daß das charterparty die folgenden Wörter
enthielt:

*"Stevedores beschädigt, wenn irgendein, direkt zwischen Inhabern und
Stevedores ohne chrts Störung vereinbart zu werden.  Falls Inhaber
nicht imstande sind, solche Regelung, chrts auf jeden Fall zu erhalten,
um, im Erhalten dieser Regelung, zu unterstützen und schließlich
verantwortlich zu bleiben."*

 Aus Gründen, die offensichtlich werden, betrachte ich nicht, daß es
notwendig für mich ist, zu entscheiden, ob das erste abfaßt         in
diesem Punkt wirklich veranschlagen der Teil vom charterparty.  Wie
erscheint von der zweiten Preisangabe, werden die Parteien vereinbart,
daß, wenn die Antragsteller nicht imstande waren zu erreichen, Regelung
des Stevedore beschädigt, die Antwortenden sollten schließlich
verantwortlich bleiben.

6. Die Antwortenden sagten, jedoch daß die Abwesenheit vom charterparty der Verzögerungbestimmungen bedeutete, daß sie hatten, verzögert keine Verbindlichkeit für verursacht, während die körperliche Beschädigung repariert wurden. Sie möchten folglich die Bedeutung der Wörter „Stevedorebeschädigung" begrenzen der körperlichen Beschädigung. Unter bestimmten Umständen ist es zutreffend, daß das Fehlen einer Vertragsklausel von den Rechten und von den Verpflichtungen der Parteien bestimmend sein kann, aber es nicht notwendigerweise folgt solch einen eine Abwesenheit Mitteln, daß eine Partei von der Verbindlichkeit entlastet wird. In diesem Hinweis kann es wenig geben Zweifel, daß das Laden (frei in den Bezeichnungen) an der Gefahr und an den Unkosten der Antwortenden war. Im Bruch von charterparty wurde die Systemtestbeschädigung durch den zugelassenen Ausfall oder die Nachlässigkeit der Stevedores verursacht. Ich kann sehen, daß keine Notwendigkeit, die Bedeutung der Wörter „Stevedore zu analysieren" beschädigt, damit sie nur auf der körperlichen Beschädigung beziehen. Es liegt auf der Hand, daß es Gelegenheiten gibt (wie aufgetreten in Odessa) wenn die körperliche Beschädigung wie, sofortig Reparatur zu erfordern ist, die entweder weitere Betriebe auf dem Behälter oder eine Abfahrt verzögern könnte. Es würde ziemlich unlogisch sein, wenn ein Inhaber erwartet wurde, die Kosten von zu tragen verzögert ohne die Gelegenheit, recompense anderwohin zu suchen. In der Tat würde solch ein Resultat mit einem charterparty Regime inkonsequent sein, das die Unkosten und die Gefahr des Ladens nach Charterern auferlegt.

7. Zwei Arten Beschädigung wurden durch diesen Ausfall oder Nachlässigkeit verursacht. Zuerst wurde die körperliche Beschädigung verursacht. Daß Beschädigung vorbei repariert wurde und für von die Stevedores gezahlt. Es gibt folglich keinen Anspruch in Bezug auf ihn. Zweitens gibt es die finanziellen Beschädigungen, das in diesem Hinweis auf die Zeit begrenzt worden ist, für die der Behälter verzögert wurde, während die körperlichen Beschädigungen repariert wurden. In Kurzschluß, ein Schadensersatzanspruch für Verzögerung. Die Antwortenden diskutieren nicht, daß die vessels Abfahrt wegen der Notwendigkeit am Behälter repariert zu werden verzögert wurde. I finden folglich, daß der Behälter wegen dieser Notwendigkeit verzögert wurde.

6

8. Zeit Blätter und eine Aussage über Tatsachen waren im Beweis. Es ist frei, daß Laden der anderen Ladung nicht bis 17.30 am 15. Dezember durchgeführt wurde. Ich betrachte, daß begonnen an diesem Zeitpunkt verzögert, und nicht bei 20.00 am 14. Februar, um die die Antragsteller rangen. Die Reparaturen waren bei 23.00 am 18. Dezember komplett. Ich betrachte daß, der Punkt in der Zeit zu sein, als aufgehört verzögert. Der Behälter wurde folglich für 3 Tage 5 Stunden und 30 Minuten zurückgehalten. Die Periode zwischen 23.00 am 18. Dezember und 01.40 am 19. Dezember wurde durch die Normalbetriebe des Erreichens der Portabstand Betriebe besetzt, die auf jeden Fall würden aufgenommen worden sein gemußt haben, wenn der Behälter gewesen war, an einem Vorabend zu segeln.

9. Die Antwortenden reichen ein, daß sie nicht verantwortlich sind, weil die Antragsteller ein verpflichtet, "maximum endeavour" auszuüben, um von den Stevedores alle passenden Mengen zu erholen waren. Leider für die Antwortenden, gibt es keine solchen Wörter in der relevanten Klausel. Tatsächlich erforderte die Klausel das Antwortende "to auf jeden Fall assist" die Antragsteller. So wenn alles, die maximale Bemühung von seiten des Antwortende -- eine kommerziell stichhaltige Annäherung im Kontext eines Ladens angefordert wurde, das an ihrer Gefahr und an Unkosten aufgenommen wurde. Der Beweis war, daß es zahlreiche Diskussionen zwischen den Parteien gab und daß weder die Antragsteller noch die Antwortenden in der Lage waren zu bilden, Fortschritt mit den Stevedores auf der Frage des Ausgleiches für beim Segeln verzögert. Die Antwortenden sagen, daß sie tun können no more trotz, was sie als ihre Bemühungen, die Antragsteller in jeder Weise zu unterstützen beschreiben.

10. Ich bin auf dem Beweis erfüllt, daß die Antwortenden alle Mittel sie Dose verwendet haben, die Antragsteller zu unterstützen. Jedoch entlud der Gebrauch von jenen Mitteln die Antwortenden nicht von der Verbindlichkeit, weil, wie die Wörter des Klauselzustandes, die Antwortenden verantwortlich bleiben. Jene Wörter können nur bedeuten, daß, wenn die Antragsteller nicht erfolgreich waren, wenn sie eine Wiederaufnahme von den Stevedores bewirkten, dann die Antwortenden

7

zahlen würden.  Solch ein Aufbau ist sinnvoll im Kontext von einem charterparty auf freiem in den Bezeichnungen.

11. Der andere Boden der Verteidigung baute ist auf eine Behauptung, die die Antragsteller für fünf Monate verzögern, bevor sie den Schadensersatzanspruch für Verzögerung darstellen.  Selbst wenn die Antragsteller verzögert hatten (und ich finde, daß sie, nicht weil den Antwortenden eine Rechnung am 31. Dezember 2005 geschickt wurde), verzögert in sich ist nicht ein Boden der Verteidigung.  Auf jeden Fall wenn die Antragsteller versuchten, das recompense zu erreichen, das von den Stevedores direkt ist, dann einiges verzögert war unvermeidlich.

12. Ich habe in Punkt 8 über dem gefunden, den der Behälter für 3 Tage 5 Stunden und 30 Minuten verzögert wurde.  Beschädigungen für Verzögerung sollen durch Hinweis auf dem Börsenkurs des Behälters errechnet werden.  In Ermangelung des Beweises hinsichtlich des Börsenkurses, ist es zulässig, die Rate der überliegezeit zu verwenden, oder die Miete, die in einem Charter -- gegeben wird, sehen <u>The Timna</u>

[1971] 2 Lloyd's Rep. 91.  Obgleich die überliegezeitrate US$35,000 pro Tag war, suchen die Antragsteller nur diese Rate während der Periode von 19 Stunden 30 Minuten 17.30 am 15. Dezember vorangehend.  Ich bin jedoch gesunken, die 19 Stunden 30 Minuten im Verzögerunganspruch mit einzuschließen.  Für Zeit nach 17.30 am 15. Dezember suchen die Antragsteller, mit der niedrigeren Rate von US$27,500 zurückzugewinnen, das sie sagen, wie Zeitcharterer, die sie den eingetragenen Inhabern zahlten.  Die relevante Zeitcharter war im Beweis.  Während der Periode zwischen 17.30 am 15. Dezember und 23.00 am 18. Dezember erlaube ich Beschädigungen mit der Rate von US$27,500 pro Tag oder von Prorata.  Die zugesprochene Menge ist US$88,802.08.  Ich habe Interesse mit einer Rate zugesprochen und in gewissem Sinne, die mit der Praxis London in der Seeschlichtung gleichbleibend ist.

13. Die Antragsteller sind in diesem Schlichtung Hinweis und werden erlaubt folglich zu ihren wiedergutzumachenden Kosten zur Standardgrundlage erfolgreich gewesen.  Ich hebe zu mich Energie auf, jene Kosten festzusetzen.  Es ist auch angebracht, daß die Antwortenden die Gebühren auf dem ersten abschließenden Preis zahlen sollten und,

8

wenn jene Gebühren von den Antragstellern gezahlt worden sind, um sofortig Vergütung dann zu bilden den Antragstellern dieser Zahlung.

........................................